**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **MICHAEL POTICNY**, | Case No. 3:22-cv-01243-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MOVERS AND PACKERS RELOCATION SPECIALISTS LLC**, | |
| Defendant. | |

**IMMERGUT, District Judge.**

      Before this Court is Plaintiff Michael Poticny's Second Motion for Default Judgment. ECF 15. On October 6, 2022, the Clerk entered the default of Defendant Movers and Packers Relocation Specialists LLC, which has not appeared in this action. ECF 14. Plaintiff now seeks a default judgment against Defendant.

      For the following reasons, Plaintiff's Second Motion for Default Judgment is GRANTED in part and DENIED in part.

**LEGAL STANDARDS**

Following the Clerk's entry of default under Federal Rule of Civil Procedure 55(a), the general rule is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). The court, however, does not accept as admitted legal conclusions or facts that are not well-pleaded. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

After the entry of a defendant's default, the Clerk is authorized to enter a default judgment if the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation . . . against a defendant who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). A sum is certain when "no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004) (citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)).

If the defendant has appeared or if the plaintiff's claim is not for a sum certain, the court may enter a default judgment. *See* Fed. R. Civ. P. 55(b)(2). The court's decision whether to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has identified seven factors to guide a district court's consideration of whether to enter a default judgment ("*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of

a dispute concerning material facts[,] (6) whether the default was
due to excusable neglect, and (7) the strong policy underlying the
Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The "starting point," however,
"is the general rule that default judgments are ordinarily disfavored." *Id*. at 1472.

## BACKGROUND

The following background is taken from allegations in Plaintiff's Complaint. ECF 1.
Plaintiff Poticny is a former resident of Sherwood, Oregon. *Id.* at ¶ 8. In the spring of 2022,
Plaintiff, who had decided to move with his family from Oregon to Pennsylvania, contacted All
Coast Moving Group ("All Coast"), a broker that contracts with carriers to transport household
goods, for help handling the cross-country move. *Id.* at ¶¶ 9, 10; ECF 15 at 2. Plaintiff and All
Coast executed a Binding Moving Estimate to transport Plaintiff's household property for
$26,536.58. ECF 1 at ¶ 11.

As a broker, All Coast contacted Defendant Movers and Packers, LLC—a New Jersey
limited liability company—who agreed to transport the property for the price contained in the
Binding Estimate. *Id.* at ¶ 12. Defendant signed a Job Acceptance Form, in which they agreed to
adopt the Binding Estimate as their own. *Id.*

When Defendant arrived at Plaintiff's residence, they required Plaintiff to sign a blank
Bill of Lading before loading Plaintiff's property onto the moving truck. *Id.* at ¶ 14. After
loading the property, Defendant's representative filled in the "actual" cubic feet that the property
occupied on the truck and a new total of $44,634 based on that amount of space that the property
purportedly occupied on the Bill of Lading. *Id.* at ¶ 16. Defendant did not conduct a physical
inventory of Plaintiff's property before loading the property onto the moving truck, nor did
Defendant rescind the Binding Estimate and provide a new written estimate before demanding a
higher price. *Id.* at ¶ 17. Plaintiff likewise did not rescind the Binding Estimate before the

PAGE 3 – OPINION AND ORDER

property was loaded onto the moving truck and did not agree to the amount that Defendant filled in on the Bill of Lading. *Id.* at ¶ 18. Plaintiff subsequently refused to pay the increased amount demanded by Defendant. *Id.* at ¶ 19. Following Plaintiff's refusal to pay the increased price, Defendant transported the property to an undisclosed location. *Id.* at ¶ 20. Plaintiff alleges that Defendant continues to hold Plaintiff's property "hostage . . . until [Plaintiff] pays the full $44,634 demanded by" Defendant. *Id.*

Plaintiff attempted to contact Defendant twice in July and received no response. *Id.* at ¶¶ 24–26. Plaintiff also filed a complaint with the Federal Motor Carrier Safety Administration on July 27, 2022, to which Defendant has not responded. *Id.* at ¶ 27. Plaintiff filed his Complaint in this case on August 23, 2022, and served Defendant, through its registered agent, with a copy of the Complaint and summons on September 1, 2022. ECF 15 at 2. The deadline to appear or file an answer was September 22, 2022, and Defendant did not file any responsive pleadings or otherwise appear within the required 21-day period. *Id.* Plaintiff filed a Motion for Default Judgment, ECF 7, which this Court denied with instruction to first file a request for Entry of Default with the clerk. ECF 9. On September 29, 2022, Plaintiff filed a Motion for Entry of Default, ECF 10, which the clerk entered on October 6, 2022. ECF 14. Plaintiff then filed his Second Motion for Default Judgment on October 19, 2022. ECF 15.

## DISCUSSION

As an initial matter, this Court is satisfied that it has personal jurisdiction over Defendant based on the facts in this record. A district court "has an affirmative duty" to determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant before entering a default judgment. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court "may dismiss an action *sua sponte*" where personal jurisdiction does not exist. *Id*. However, it must first give the

plaintiff moving for a default judgment the opportunity to show facts supporting the exercise of personal jurisdiction. *Id.* at 712–13.

Plaintiff has alleged sufficient facts to support the exercise of specific personal jurisdiction in this case. Specific personal jurisdiction exists where a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within" the state attempting to exert personal jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A plaintiff's claims must also "arise out of or relate to the defendant's contacts" with the forum. *Bristol-Myers Squibb Co. v. Sup. Ct. of California, San Francisco Ctny.*, 137 S. Ct. 1773, 1780 (2017). While this does not necessarily require a strict causal link between the defendant's contacts and the plaintiff's injury, the two must be sufficiently related such that subjecting the defendant to suit in the forum state would not "offend traditional notions of fair play and substantial justice." *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945). Courts within the Ninth Circuit apply a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

This Court finds all three prongs met in the present case. Although Defendant is a New Jersey limited liability company, it contracted to do work in Oregon by loading and transporting Plaintiff's goods from his home in Oregon to his new home on the east coast, thereby

"consummate[ing] some transaction with" Plaintiff, a resident of the forum state. ECF 1 at ¶¶ 2, 12; *see also Brayton Purcell LLP*, 606 F.3d at 1128. Plaintiff's alleged injury arose directly out of Defendant's actions in the forum state: Defendant also made Plaintiff sign the challenged Bill of Lading, loaded Plaintiff's property onto their truck, and refused to release the property in Oregon. ECF 1 at ¶¶ 13–15, 17. Finally, given Defendant's contacts with Oregon, including a willingness to travel to or send agents to the state to conduct business, the exercise of jurisdiction is not unreasonable.

This Court is also satisfied that it has subject matter jurisdiction. Federal courts may hear suits that raise a federal question. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiff's Complaint contains a well-pleaded federal claim under 49 U.S.C. § 14706 (the "Carmack Amendment"), which provides "a uniform national liability policy for interstate carriers." *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992). "A plaintiff may bring a Carmack claim in state or federal court . . . but the district courts have original jurisdiction only if the amount in controversy exceeds $10,000, exclusive of interests and costs . . . ." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 n.2 (9th Cir. 2007). Here, Plaintiff alleges an amount in controversy of approximately $120,000 (representing the value of Plaintiff's property). This Court therefore has federal question jurisdiction over Plaintiff's Carmack Amendment claims. This Court also has supplemental jurisdiction over Plaintiff's state law claims, as they arise out of a common nucleus of operative fact: Defendant's actions in loading Plaintiff's property onto their moving truck, failing to observe the Binding Estimate or properly rescind the estimate, and

failing to return Plaintiff's property. 28 U.S.C. § 1367(a); *see also Trustees of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

## A.  Procedural Requirements

Plaintiff has satisfied the requirements of Local Rule 55 and Federal Rule of Civil Procedure 55. Plaintiff requested, ECF 10, and received, ECF 14, the Clerk's entry of default. Defendants are neither minors nor incompetent. ECF 1. Defendants have not appeared personally or by a representative, so they are not entitled to written notice of the application for default judgment. Fed. R. Civ. P. 55(b); *see also Stephen Wurth Photography, Inc. v. Wetpaint.com, Inc*., No. SA CV 16-2101-DOC, 2018 WL 5266861, at *2 (C.D. Cal. Oct. 5, 2018) (determining plaintiffs' "procedural compliance").

The relief granted in default judgment is limited to what is demanded in the pleadings. Fed. R. Civ. P. 54(c). The remedies requested in the instant motion "are not different from and do not exceed the relief prayed for in the Complaint." *Philip Morris USA Inc. v. Banh*, No. CV 03-4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *see also* ECF 15 at 3.

Finding procedural compliance, this Court now turns to Plaintiff's Motion for Default Judgment.

## B.  Default Judgment under FRCP 55

"The dispositions of motions for entries of default and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Shah v. New York State Dep't of Civ. Serv*., 168 F.3d 610, 615 (2d Cir. 1999) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)) (alterations in original). Plaintiff has moved this Court, and not the Clerk, for default judgment. A court "may" enter default judgment, while

the Clerk "must" do so if certain criteria are satisfied. *See S. Coast Lumber Co. v. Blue Lake Power, LLC*, No. 1:15-cv-01651-CL, 2015 WL 13238463, at *1 (D. Or. Dec. 1, 2015), *report and recommendation adopted*, No. 1:15 CV 01651-CL, 2016 WL 8735677 (D. Or. Jan. 22, 2016) (rejecting plaintiff's claim that Rule 55(b)(1)'s mandatory provision applies because "Plaintiff's request is addressed to the Court, [so] the Court will analyze its motion under subsection (2)'s discretionary standard"). As such, despite Plaintiff's assertion that it moves for default judgment under FRCP 55(b)(1), ECF 15 at 3, this Court, in its discretion, will analyze Plaintiff's motion under the Rule 55(b)(2) standard.

   1. ***Eitel* Factors**

On balance, the *Eitel* factors weigh in favor of granting Plaintiff's Motion for Default Judgment based on violations of the Carmack Amendment but weigh against granting Plaintiff's motion with respect to its state-law claims. Each factor is discussed in turn.

   **a.  Factor 1: Prejudice to Plaintiff**

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Given Defendant's failure to cooperate in this lawsuit and Plaintiff's lack of alternative avenues of recovery, Plaintiff would suffer prejudice if default judgment is not entered. This factor thus weighs in favor of default judgment. *See Garcia v. Pacwest Contracting LLC*, No. 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (noting lack of "alternative means by which to resolve their present claims" and finding this factor weighed in favor of default judgment).

### b.  Factors 2 and 3: Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors "require that a plaintiff state a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (quotation marks and citation omitted); *see also Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("The second and third *Eitel* factors . . . are often analyzed together." (citation omitted)). For the purposes of default judgment, all well-pleaded allegations in the complaint, except those relating to damages, are assumed to be true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Plaintiff brings claims under the Carmack Amendment, the Oregon Unlawful Trade Practices Act, and common law (contract and fraud). This Court considers first Plaintiff's Carmack Amendment Claim, which imposes strict liability on interstate carriers for "actual loss or injury to property," 49 U.S.C. § 14706(a), and is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation . . . ." *Georgia, Florida, & Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916). To establish a prima facie case against a carrier under the Carmack Amendment, the plaintiff must allege: (1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, or failure to deliver altogether, and (3) the amount of damages. *Beta Spawn, Inc. v. FFE Transportation Services, Inc.*, 250 F.3d 218, 223 (3d Cir. 2001); *accord Roberts v. N. Am. Van Lines, Inc.*, 394 F. Supp. 2d 1174, 1182 (N.D. Cal. 2004). Plaintiff's Complaint alleges that Defendant agreed to transport Plaintiff's goods pursuant an interstate bill of lading, ECF 1 at ¶ 14, and that (1) Plaintiff delivered the goods to Defendant in good condition, *see id.* at ¶ 16; (2) Defendant failed to

deliver the goods to their final destination, *id.* at ¶ 20; and (3) Plaintiff suffered damages in the amount of $120,000, *id.* at ¶ 25. Accordingly, Plaintiff is entitled to default judgment on its Carmack claim.

Plaintiff is not entitled to default judgment on its contract claim, because Plaintiff has not stated a claim for which they can recover. *See PepsiCo*, 238 F. Supp. 2d at 1175. The Carmack Amendment is "the exclusive cause of action for contract claims alleging delay, loss, failure to deliver or damage to property." *Hall*, 476 F.3d at 688. "[C]laims based on conduct separate and distinct from the delivery, loss of, or damage to goods survive preemption." *Roberts*, 394 F. Supp. 2d at 1181. Courts have held that "bait and switch" claims, wherein a carrier changes the price of the shipment upon receipt of the goods, are preempted by the Carmack Amendment, even if the initial estimate occurred before the carrier took possession of the goods. *United Van Lines, Inc. v. Shooster*, 860 F. Supp. 826, 827–28 (S. D. Fla. 1992).

Plaintiff's alleged harm from Defendant failing to honor the binding estimate arises directly out of Defendant's shipment of Plaintiff's goods via interstate commerce: Defendant "required [Plaintiff] to sign a blank Bill of Lading before loading the property," ECF 1 at ¶ 14, loaded the property and "filled in the 'actual' cubic feet that the property occupied on the truck and a new total of $44,634 based on that amount of space that the property purportedly occupied," *id.* at ¶ 16, and "did not rescind the Binding Estimate and did not provide a new revised written estimate before demanding a higher amount to transport the property." *Id.* at ¶ 17. Plaintiff, moreover, is claiming damages from breach of the Binding Estimate based off "the approximate value of the property." *Id.* at ¶ 43; *compare Roberts*, 394 F. Supp. 2d at 1182 (finding the plaintiffs' breach of contract claim was not preempted by the Carmack Amendment where the plaintiffs alleged neither loss of damage to household goods nor based their amount or

form of relief requested on the value assigned to their belongings). Plaintiff's claim based on breach of the Binding Estimate is therefore "based on loss or damage to goods shipped in interstate commerce" and is preempted by the Carmack Amendment.

Plaintiff's fraud claims are likewise preempted by the Carmack Amendment. The Carmack Amendment "constitutes a complete defense to common law claims against interstate carriers for negligence, fraud and conversion, even though these claims may not be completely preempted." *White v. Mayflower Transit, L.L.C.*, 543 F.3d 581, 584 (9th Cir. 2008) (citing *Hall*, 476 F.3d at 689). Plaintiff's fraud claims arise out of the same conduct that gives rise to Plaintiff's Carmack Claim: that Defendant intentionally failed to provide an advance copy of the Bill of Lading, intentionally loaded the property before obtaining a signature, raised the requested payment higher than the Binding Estimate after the property was loaded, and refused to return the property. ECF 1 at ¶¶ 49, 53.

Finally, this Court finds that Plaintiff's state-law consumer protection claims are preempted by the Carmack Amendment. Like Plaintiff's contract and fraud claims, Plaintiff's claims under the Oregon Unlawful Trade Practices Act, O.R.S. 646.605 et. seq, arise out of Defendant's actions in loading and refusing to unload Plaintiff's property. ECF 1 at ¶¶ 52–58. Though case law discussing Carmack Amendment preemption typically focuses on the preemption of common law claims, courts have also held that the Carmack Amendment preempts causes of action under state consumer protection laws. *Schultz v. Auld*, 848 F. Supp. 1497, 1503 (D. Id. 1993) (holding that the Carmack Amendment preempts claim under the Idaho Consumer Protection Act); *Gordon v. United Van Lines*, 130 F.3d 282, 289 (7th Cir. 1997) (holding that the Carmack Amendment preempts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act); *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir.

1997) (holding that the Carmack Amendment preempts claims under brought under Massachusetts' consumer protection laws). Though the Ninth Circuit has not addressed this preemption issue specifically, this Court is persuaded that this outcome best promotes the Carmack Amendment's purpose of creating a uniform national scheme of liability for interstate carriers. *Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913) ("[I]t is evident that Congress intended to adopt a uniform rule and relieve [interstate shipping] contracts from the diverse regulation to which they had been theretofore subject.").

The second and third *Eitel* factors thus weigh in favor of granting default judgment for Plaintiff's Carmack Amendment claim. Plaintiff has failed to meet the second and third factors as to its contract, fraud claims, and consumer protection claims.

### c. Factor 4: Sum of Money at Stake

The court must "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "[A] large sum of money at stake would disfavor default judgment." *J & J Sports Prods., Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) (citing *Eitel*, 782 F.2d at 1472); *see also Eitel*, 782 F.2d at 1472 (noting three million dollars sought in damages as factor weighing against granting default judgment). Plaintiff in this case seeks the immediate return of their property or, if the property is not timely delivered, damages of $120,000, which is the estimated value of the property. This Court does not find this sum to be so large as to "disfavor default judgment." *J&J Sports Prods.*, 2010 WL 2757106, at *5.

### d. Factor 5: Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers whether a dispute of material facts is likely. "Where the [p]laintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." *3M Co. v. Phx. Auto. Refinishing Co., Ltd.*, CV 17-

00649-RSWL-DTB, 2018 WL 1989536, at *5 (C.D. Cal. Apr. 25, 2018) (quoting *Warner Bros. Home Ent., Inc. v. Slaughter*, No. CV 13–0892–DOC RNB(x), 2013 WL 5890682, at *3 (C.D. Cal. Oct. 30, 2013)) (alteration in original). Having found Plaintiff's Complaint to be well-pleaded, and noting that Defendant has failed to timely respond to Plaintiff's claims, this factor weighs in favor of default judgment.

### e.   Factor 6: Whether Default was Due to Excusable Neglect

This factor considers whether the defendant's default was due to excusable neglect. Because Defendant was properly served by service via authorized agent under Oregon law in September 2022, ECF 6; ECF 13 this factor favors default judgment. *See Nat'l Photo Grp., LLC v. Pier Corp.*, No. SACV 13–1165–DOC, 2014 WL 12576641, at *3 (C.D. Cal. Mar. 10, 2014); *3M Co.*, 2018 WL 1989536, at *5.

### f.   Factor 7: Strong Policy Preference for Decisions on the Merits

The seventh *Eitel* factor considers the strong policy preference in favor of decisions on the merits. However, "where a defendant's failure to appear 'makes decision on the merits impracticable, if not impossible,' entry of default judgment is warranted." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citing *PepsiCo*, 238 F. Supp. 2d at 1177); *see also 3M Co.*, 2018 WL 1989536, at *5. Such is the case here, as Defendant has failed to appear in the present case, and has further failed to respond to various letter and complaints lodged against them by Plaintiff. *See* ECF 1 at ¶¶ 24–28.

### 2.   Remedy

Federal Rule of Civil Procedure 54(c) limits relief in default judgment to what is demanded in the pleadings. Fed. R. Civ. P. 54(c). In the instant Motion, Plaintiff seeks equitable relief, in the form of a judgment that either requires Defendant to deliver Plaintiff's property or disclose its location and allow Plaintiff to retrieve it. ECF 15 at 3–4. In the alternative, Plaintiff

PAGE 13 – OPINION AND ORDER

requests damages reflecting the value of his property as agreed to on the Binding Estimate. *Id.* at 4–5. Plaintiff also seeks attorney's fees. *Id.* at 6. An award of damages cannot be entered in a default judgment without a hearing "unless the amount claimed is a liquidated sum or capable of mathematical calculation*." Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

Because this Court grants Plaintiff's Motion for Default Judgment only with respect to Plaintiff's Carmack Amendment claim, this Court limits Plaintiff's relief to that which is available under the Carmack Amendment.

### a.  Relief under the Carmack Amendment

The Carmack Amendment "makes a carrier covered by the [Interstate Commerce Act] liable for damages it causes to property it transports in the amount of the 'actual loss or injury to the property.'" *Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 764 (9th Cir. 1981) (quoting 49 U.S.C. 14706(a)(1)). Plaintiff alleges that Defendant failed to deliver the property, ECF 1 at ¶ 51, and accordingly seeks equitable relief from this Court directing Defendant to return Plaintiff's property, or, in the alternative, to recover the value of the property. ECF 15 at 7.

The Carmack Amendment limits carrier liability to "actual damages." *See Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) ("The Carmack Amendment . . . makes carriers liable 'for the full actual loss, damage, or injury caused by' them to property they transport."). This Court thus limits consideration of relief to the actual damages sustained by Plaintiff and declines Plaintiff's request for equitable relief.

In support of his request for actual damages, Plaintiff submits the Binding Estimate, which includes an estimate of the overall value of Plaintiff's property. ECF 16-A at 1. The estimate is not itemized and appears to be based on Plaintiff's own personal valuation of his

property. ECF 16 at ¶ 3. "[T]he owner of personal property . . . is competent to express an opinion regarding its value." *Searcy v. Bend Garage Co.*, 286 Or. 11, 17 (1979) (citations omitted). In addition to Plaintiff's own presumed competency in estimating the value of his personal property, this Court notes that the Binding Estimate shows that Plaintiff and Defendant agreed to load and transport 41 items (or 191 individual pieces), including several pieces of large home furniture and electronics such as a washing machine, refrigerator, and television. ECF 16-A at 8. The estimated property value claimed in Plaintiff's Motion for Default Judgment, further, is the same as the estimate claimed in Plaintiff's Complaint. *See Waller v. Gary & Koby Tranps. Inc.*, No. 1:08-cv-0725, 2008 WL 4224722, at *5 (reducing default judgment award for a Carmack Amendment claim where damages claimed in the motion for default judgment exceeded damages claimed in the complaint). This Court finds that Plaintiff has adequately identified the specific damages requested and provided sufficient documentation to meet its burden in establishing damages of $119,784 as the "actual loss . . . to the property." *Contempo*, 661 F.2d at 764.

### b. Attorney's Fees and Costs

Plaintiff also requests attorney's fees. ECF 15 at 6. The Carmack Amendment permits recovery of attorney's fees by a shipper involving household goods in certain limited circumstances. *See* 49 U.S.C. § 14708. To receive an award of attorney's fees pursuant to section 14708, a plaintiff must timely submit a claim for the loss of household goods, prevail in a court action, have no notice from the shipper of an available dispute resolution program, and have no arbitration decision rendered in the dispute. *Id.* § 14708(d)(1)-(3); *see also Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 171 (9th Cir. 2000).

Plaintiff has met the requirements for an award of attorney's fees under section 14708. Plaintiff alleges that the goods were loaded onto Defendant's moving truck on June 27, 2022.

Plaintiff submitted two letters alerting Defendant of their failure to deliver Plaintiff's property on July 19, 2022, and July 28, 2022, and filed the instant litigation on August 23, 2022. There is no indication that the parties proceeded to arbitration or that an arbitration decision was rendered. As default judgment is appropriate for Plaintiff's Carmack Amendment claim, Plaintiff has prevailed in this action.

Attorney's fees under 49 U.S.C. § 14708 must be reasonable. The preferred method for determining reasonable attorney's fees is calculation of the lodestar figure, the product of the number of hours reasonably spent on the litigation and a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Similarly, the fee applicant has the burden of proving that the requested hourly rate is reasonable. *See Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

Plaintiff asks for $25,534.50 in attorney's fees and $709.41 in costs, ECF 19 at ¶ 7, and submits invoices in support of this request. ECF 17-1. Plaintiff specifically requests attorney's fees for 30.6 hours of time by lead attorney Paul Barton, charged at an hourly rate of $425; 16.5 hours of time for legal assistant Dorothy Miller, charged at an hourly rate of $200; 31.9 hours of time for associate attorney Nathaniel Woodward, charged at an hourly rate of $285; and 0.60 hours of time for paralegal Jessica Manitsas, charged at $230 an hour. ECF 19 at ¶ 8.

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

(9th Cir. 1990). "This District considers the most recent Oregon State Bar Economic Survey

('OSB Survey') as its 'initial benchmark' in determining whether hourly billing rates are

reasonable." *Bark v. Northrop*, 300 F.R.D. 486, 493 (D. Or. 2014) (quotation marks and citations

omitted); LR 54-3(a) (noting in the "Practice Tip" that the OSB Survey is the initial benchmark).

"If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the

prevailing party to justify that higher rate." *Bark*, 300 F.R.D. at 493 (citations omitted).

Attorneys may argue for higher rates based on inflation, specialty, or other factors. LR 54-3. The

most recent OSB Survey is from 2017.

In the declaration supporting award of attorney's fees, lead attorney Paul Barton notes

that he has practiced real estate and business law since 2006, translating to roughly sixteen years

of experience. According to the OSB Survey, the median rate for attorneys practicing in the

Portland area with 16-20 years of experience is $325—$100 less than the rate proposed in

Plaintiff's fee request. OREGON STATE BAR, 2017 ECONOMIC SURVEY 39 tbl. 36 (2017),

https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited

November 2, 2022). The declaration submitted in support of the fee request does not contain any

justification for the higher rate, except to state that the matter "involves complex issues of

Federal and state law, including across jurisdictions." ECF 19 at ¶ 15. Plaintiff's Complaint does

state claims under federal and state law; however, as discussed above, Plaintiff's state law claims

are clearly preempted by the Carmack Amendment claim, and Plaintiff's Carmack Amendment

claim is not particularly complex. This Court thus reduces the fee for Mr. Barton from $425 to

$325 per hour.

The declaration does not include any information about the number of years that

Nathaniel Woodward has been practicing. ECF 19 at ¶ 13. The requested rate for Mr. Woodward

is $285, which is slightly above the median rate for a Portland-area attorney with seven to nine

years of experience. OREGON STATE BAR, 2017 ECONOMIC SURVEY 39 tbl. 36 (2017),

https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited

November 2, 2022). According to the Oregon State Bar Membership Directory, Mr. Woodward

was admitted to the Oregon State Bar in 2020, meaning he has just two years' experience. The

median rate for a Portland-area attorney with two years' experience is $235. OREGON STATE

BAR, 2017 ECONOMIC SURVEY 38 tbl. 36 (2017),

https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited

November 2, 2022). Accordingly, this Court will award Mr. Woodward fees at a rate of $235 per

hour.

   The declaration likewise does not specify the years of experience for paralegal Jessica

Manitsas in support of Plaintiff's request for $230 per hour in fees. ECF 19 at ¶ 8. Without any

identifying attributes from which to judge the reasonableness of the requested rate, "the court

defaults to the median rate of a first-year paralegal." *Reed v. Ezelle Investment Properties, Inc.*,

No. 3:17-cv-1364, 2019 WL 1453480, at *5 (D. Or. Apr. 2, 2019). According to the 2020

National Utilization and Compensation Survey Report, the mean hourly billable rate for a

paralegal in the Far West region, which includes the State of Oregon, is $140 per hour.

NATIONAL ASSOCIATION LEGAL ASSISTANTS, NATIONAL UTILIZATION AND COMPENSATION

SURVEY REPORT 10 fig.28 (2020) ("NALA REPORT"); *see also Pac. Coast Fruit Co. v. Ron

Squires dba Four Seasons Farmers Mkt.*, No. 3:16-CV-00463-BR, 2016 WL 4443166, at *3 (D.

Or. Aug. 19, 2016) (relying on a prior version of this report to determine the reasonable hourly

billable rate for a paralegal). This Court thereby finds that $140 per hour is a reasonable fee for

the work done by Jessica Manitsas.

Finally, the declaration does not specify the years of experience for legal assistant Dorothy Miller in support of Plaintiff's request for $200 per hour in fees. ECF 19 at ¶ 8. At the outset, this Court notes that courts in this district are divided as to whether to award fees for work performed by legal assistants. *Compare Aichele v. Blue Elephant Holdings, LLC*, 3:16-cv-02204-BR, 2018 WL 2357533, at *5 (D. Or. May 24, 2018) ("The Court has not found any report that reflects hourly billing for legal assistants (as opposed to paralegals)" and declining to award any fees for legal assistant work) *with Kulpala v. Delgoda*, 3:15-cv-01890-BR, 2016 WL 1618285, at *1 (D. Or. April 21, 2016) (noting that "attorneys' fee awards permitted by statute frequently compensate for work performed by law clerks and legal assistants"). When courts in this district have awarded fees for work done by legal assistants, they have awarded those fees at rates well below the $200 requested in the present case. *See e.g.*, *Wilson v. Decibels of Oregon, Inc.*, Nos. 1:17-cv-01558, 1:17-cv-01624, 2019 WL 6245423, at *4 (D. Or. Nov. 22, 2019) (awarding $90 per hour for work done by legal assistants); *Oregon Laborers-Employers Health & Welfare Trust Fund v. Baseline Indus. Constr. Inc.*, No. 3:19-cv-1343, 2019 WL 6329336, at *4 (D. Or. Nov. 26, 2019) (awarding $90 per hour for work done by legal assistants); *Anderson v. Ross Island Sand & Gravel Co.*, No. 3:18-cv-00898, 2018 WL 5993581, at *4 (D. Or. Oct. 24, 2018) (awarding $95 per hour for work done by legal assistants); *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d. 1228, 1249 (D. Or. 2013) (awarding $50 per hour for work done by legal assistants); *Sterling Sav. Bank v. Derek L. Brown & Assocs., Inc.*, No. 03:10–cv–00674–BR, 2013 WL 164424, at *4 (D. Or. Jan. 15, 2013) (awarding $50 per hour for paralegals and assistants); *Horton v. Comm'r Social Sec. Admin.*, No 1:12-cv-00612, 2013 WL 3146827, at *3 (D. Or. June 18, 2013) (awarding $80 per hour for work done by legal assistants). This Court finds that $90 per hour is a reasonable fee for the work done by Dorothy Miller.

Having reduced the requested fees and hours to a rate that this Court finds reasonable, this Court hereby awards $19,010.50 in attorney's fees[1] and $709.41 in costs for a total of $19,350.91.

## CONCLUSION

For the reasons stated above, this Court GRANTS in part and DENIES in part Plaintiff's Motion for Default Judgment. Specifically, this Court GRANTS Plaintiff's Motion with respect to Plaintiff's Carmack Amendment claims. However, because Plaintiff's contract and fraud claims are preempted as a matter of law by the Carmack Amendment, this Court DENIES Plaintiff's Motion with respect to Plaintiff's breach of contract, fraud, and consumer protection claims.

This Court ORDERS Defendant to pay $119,784 in damages and $19,719.91 in attorney's fees and costs.

**IT IS SO ORDERED.**

DATED this 30th day of December, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[1] Attorney's fees are broken down as follows: $325 (30.6) + $235 (31.9) + $140 (.60) + $90 (16.5).